```
                     UNITED STATES DISTRICT COURT

                    CENTRAL DISTRICT OF CALIFORNIA

PATRICK REILLY MORENO,          )   Case No. ED CV 12-211-PJW
                                )
            Plaintiff,          )
                                )
     v.                         )   MEMORANDUM OPINION AND ORDER
                                )
CAROLYN W. COLVIN,              )
ACTING COMMISSIONER OF THE      )
SOCIAL SECURITY ADMINISTRATION, )
                                )
            Defendant.          )
                                )
```

## I.

## INTRODUCTION

Before the Court is an appeal of a decision by Defendant Social Security Administration ("the Agency"), denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff claims that the Administrative Law Judge ("ALJ") erred when he failed to fully develop the record by obtaining additional medical records. For the reasons set forth below, the Court concludes that the ALJ erred but that the error was harmless. As such, the Agency's decision is affirmed.[1]

---

[1] Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant, pursuant to Fed. Rule Civ. Pro. 25(d).

II.

SUMMARY OF PROCEEDINGS

Plaintiff applied for DIB and SSI in September 2006, alleging that he had been unable to work since September 2003, due to arthritis in his back, a heart condition, stomach problems, carpal tunnel syndrome, and depression. (Administrative Record ("AR") 72-76, 79, 138, 169.) The Agency denied his applications initially and on reconsideration. (AR 62-71, 79-83.) He then requested and was granted a hearing before an ALJ. (AR 85-87.) Plaintiff appeared with counsel and testified at the hearing in February 2010. (AR 24-61.) In April 2010, the ALJ issued a decision denying benefits. (AR 10-19.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-6.) He then commenced this action.

III.

ANALYSIS

A.  The ALJ's Development of the Record

Plaintiff contends that the ALJ erred by failing to develop the record by obtaining medical records relating to: (1) carpal tunnel syndrome; (2) irritable bowel syndrome; (3) and mitral valve surgery. (Joint Stip. at 4-9.) For the following reasons, the Court finds that the ALJ erred but that the error was harmless.

ALJs have a duty to fully and fairly develop the record, which duty is triggered by inadequate or ambiguous evidence that impedes an ALJ's ability to properly evaluate a claim. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1512(e), 416.912(e). The claimant has the burden to prove that he was prejudiced by the ALJ's failure to develop the record. *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2010) ("Where harmfulness of the

2

error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm.") (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

Plaintiff never alleged in his application that he suffered from carpal tunnel syndrome or from pain in his hands or wrists. (AR 169, 216-28, 232.) The ALJ, however, noted in his decision that carpal tunnel syndrome was mentioned in some of the medical records and that an alleged study had confirmed the presence of carpal tunnel. (AR 13.) The ALJ questioned whether such a study had been conducted and noted in his decision that, if it had been, it was not contained in the record. (AR 13.) The ALJ noted that the medical record did not contain positive signs or clinical tests establishing carpal tunnel syndrome and that an orthopedic examination was unremarkable. (AR 13.) As a result, he concluded that there was no basis for finding that Plaintiff suffered from carpal tunnel syndrome. (AR 13.)

Plaintiff argued in the Joint Stipulation that the ALJ erred in not searching for and finding the study and considering it in his decision. The Court ordered Plaintiff to submit the study so that it could consider it in evaluating the prejudice to Plaintiff. In response, Plaintiff informed the Court that there was no such study. (See January 10, 2013 Reply to Court Order ("Reply") at 2.) Thus, the Court concludes that the ALJ did not err in failing to obtain it because the record was not ambiguous or inadequate, *see, e.g.*, *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001), and, more importantly, the study did not exist.

Plaintiff raised similar complaints regarding irritable bowel syndrome records. He now concedes that no such records exist. (Reply at 2.) As such, the Court reaches the same conclusion: the ALJ did

3

not err in failing to locate additional records because the medical record was not so ambiguous or inadequate as to trigger the need to obtain additional records and because additional records did not exist.[2]

As to Plaintiff's mitral valve surgery, the Court finds that the ALJ's duty to fully and fairly develop the record was triggered when Plaintiff testified (in February 2010) that he had undergone mitral valve surgery in December 2008 and that he had gone to the emergency room twice after the surgery because of chest pain. (AR 42-43.) In his decision, the ALJ noted that Plaintiff had been scheduled to have the surgery in November 2008 and that Plaintiff testified he had undergone the surgery but that there was "no record that the surgery actually took place and no record of follow-up treatment or care." (AR 13.) In concluding that Plaintiff's heart condition was not severe, the ALJ relied, at least in part, on the absence of medical records about the surgery and Plaintiff's subsequent treatment. (AR 13.)

Plaintiff has now produced records, which demonstrate that he did undergo mitral valve surgery in 2008 and that he went to the emergency room thereafter complaining of chest pain.[3] The ALJ erred by not

---

[2] The ALJ rejected Plaintiff's testimony that an X-ray revealed that his bowels were "twisted" because there was no record that such an X-ray had been taken. (AR 13, 48.) Plaintiff now concedes that there was no X-ray. He contends, however, that an emergency room doctor told him that his intestines were twisted. (Reply at 2.)

[3] The Agency suggests that Plaintiff's surgery in December 2008 and subsequent treatment is not relevant to the ALJ's decision because it has no bearing on whether Plaintiff was disabled on December 31, 2008, his date last insured. (Joint Stip. at 9.) The Court disagrees. Plaintiff's heart condition clearly existed prior to his
(continued...)

4

obtaining these records and addressing them before determining that Plaintiff's heart condition was not a severe impairment. Nevertheless, the ALJ's failure to develop the record did not prejudice Plaintiff.[4]

Plaintiff contends that the "residual limitations" of his mitral valve surgery prevents him from performing light work, the type of work the ALJ concluded he could perform. (Joint Stip. at 4-5, 8.) However, the additional records that Plaintiff has submitted do not support his argument.

---

[3] (...continued)
December 2008 surgery. (Reply at 15; January 30, 2013 Reply to Court Order ("Supp. Reply") at 7 (noting Plaintiff had history of heart murmur "for the past year").) Further, Plaintiff has also applied for SSI, which is not dependent on insurance.

[4] It bears noting that the ALJ and the claimant are both responsible for ensuring that the record is complete. The Court has outlined the ALJ's duty above, but the claimant has a corresponding duty to perfect the record because he bears the burden of proving his entitlement to benefits, see *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005), and cannot meet that burden if he does not provide the medical records that support his claims. Obviously, there is tension between these two mandates and it is not always clear to the Court which side should be held responsible when records are not included. This case highlights the problem with particularity. Plaintiff argued in the Joint Stipulation that the ALJ erred by failing to acquire medical records relating to carpal tunnel syndrome and irritable bowel syndrome that Plaintiff now concedes did not exist. The ALJ would have been on an impossible quest had he tried to find these records. As this case illustrates, generally speaking, the claimant is better situated to know whether any records are missing and, if so, where they can be found. Further, it seems to make sense that the claimant would be more motivated to find these records because the claimant stands to gain from including them in the file. However, the Court need not attempt to resolve the issue of the conflicting duties in the case at bar because, even assuming that it was the ALJ's obligation to find the records in this case, there was no prejudice. The Court notes, however, that in a different case the issue of who ultimately bears the burden of locating the records may have to be addressed.

Plaintiff was admitted to the hospital for mitral valve replacement surgery on December 18, 2008. (Supp. Reply at 7.) He was discharged on December 26, 2008, with instructions not to lift more than five pounds or drive for six weeks, i.e., through the beginning of February 2009. (Supp. Reply at 10.) Clearly, for those six weeks, Plaintiff could not perform light work. The record establishes, however, that, by March 2, 2009, Plaintiff was walking every day and had no new symptoms. (Reply at 55.) His treating physician, Dr. Ravi Konchigeri, told him on that date that he was restricted to lifting no more than 25 pounds for the next six months, after which he could perform physical activity "as tolerated," and did not assess any other limitations. (Reply at 57.) Thus, by March 2009, Plaintiff could perform light work. *See* 20 C.F.R. § 416.967(b) (defining light work as requiring, among other things, the ability to occasionally lift 20 pounds and frequently lift ten pounds). Although Plaintiff subsequently complained of chest pains on June 9, 2009, it seems to have been an isolated incident, and no additional functional restrictions were imposed. (Reply at 99-101.) None of the other records submitted by Plaintiff suggest that he was precluded from performing light work. (AR 18.)

Because the additional medical records submitted by Plaintiff do not undermine the ALJ's decision, Plaintiff has not shown that he was prejudiced by the ALJ's error in failing to consider them. For that reason, the ALJ's failure to obtain them was harmless.[5]

---

[5] To the extent that Plaintiff challenges the ALJ's residual functional capacity determination with respect to his carpal tunnel syndrome and irritable bowel syndrome based solely on the original record, his claims are rejected. First, Plaintiff has not shown that
(continued...)

IV.

CONCLUSION

For these reasons, the Agency's decision denying Plaintiff's applications for benefits is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: May 23, 2013.

                                         /s/ Patrick J. Walsh
                                         PATRICK J. WALSH
                                         UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\MORENO, 211\Memo Opinion and Order.wpd

---

[5] (...continued) the ALJ's consideration of the medical record was erroneous. Second, Plaintiff's alleged limitations are largely based on his own complaints, which the ALJ found were not credible (AR 6-8), a finding Plaintiff has not challenged here.